No. 2--05--0993                                                        filed 6/6/06

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Petitioner-Appellee, | ) ) | |
| v. | ) ) | No. 05--DV--1171 |
| KENTON HOUAR, | ) ) | Honorable Joseph S. Bongiorno, |
| Respondent-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE CALLUM delivered the opinion of the court:

Respondent, Kenton Houar, *seeks review of a plenary order of protection entered against him under the Illinois Domestic Violence Act of 1986 (Act) (750 ILCS 60/101 et seq. (West 2002)).* The trial court denied respondent's motion to reconsider, and this appeal followed. For the following reasons, we reverse.

I. BACKGROUND

On July 5, 2005, Denise Houar, respondent's ex-wife, filed a verified petition for an emergency order of protection against respondent on behalf of their four minor children. She alleged that on July 2, 2005, during scheduled visitation with the children, respondent hit their daughter Aubrey, age 13, with a plastic stick and caused a welt on her leg. The trial court granted the petition and issued the emergency order, prohibiting respondent from making contact with Denise or their children.

On July 22, 2005, the trial court held a hearing regarding the extension of the emergency order and the issuance of a plenary order of protection. Before the hearing began, the trial court asked respondent's counsel whether respondent would be testifying. Respondent's counsel indicated that respondent, who was present, would not testify.

Denise testified that on July 2, 2005, their children spent the day--approximately 10 to11 hours--with respondent at his residence. Upon returning home, their daughter Aubrey was shaking, crying, and extremely upset. She had a raised, red welt on her leg that was approximately two inches long and one-quarter-inch wide. Aubrey did not have a welt on her leg before spending the day with respondent. Denise brought Aubrey to the police department, and respondent was subsequently arrested. Denise testified that seeing the welt on Aubrey's leg made her "extremely fearful" that "there's more physical and sexual abuse." The State rested its case. Respondent's counsel did not conduct cross-examination or move for a directed finding. Respondent did not call any witnesses and did not testify on his own behalf. Both the State and respondent waived closing argument.

The court ruled as follows:

"The standard of proof here is preponderance of the evidence. The respondent has refused to testify, which is his right under the fifth amendment. The court, in a civil proceeding, can make certain inferences from the refusal to testify. The testimony of the witness, Denise Houar, is that the child, Aubrey, 13, was in the care and custody of the--exclusive care and custody of the respondent for a period of 11 hours, at which time she returned to her home with a welt on her leg. The burden is preponderance of the evidence, not proof beyond a reasonable doubt. A plenary order of protection will enter."

Immediately following the ruling, respondent's counsel objected to the court's application of a negative inference based on respondent's failure to testify. He argued that the negative inference was inappropriate because he could not recommend that respondent testify, in light of pending criminal domestic battery charges. The court responded that it was not suggesting that counsel so recommend, but that a negative inference from respondent's refusal to testify was permissible in a civil proceeding. Counsel responded, "with all due respect, Judge, I think the inference you can draw is that he's exercising his fifth amendment right to protect himself from the criminal case." The court entered a two-year order of protection, prohibiting respondent from contact with Denise and the four children.

Respondent moved for reconsideration. He argued that the State failed to establish a prima facie case that respondent inflicted abuse. Accordingly, respondent asserted that the court should have first considered whether, based on the State's case, a defense was required before making any negative inferences from respondent's failure to testify. He further argued that the court's application of a negative inference was based on its misapprehension that respondent had invoked his fifth amendment privilege against self-incrimination. Respondent's counsel asserted that his representation to the court, prior to the plenary-order-of-protection hearing, that respondent would not testify was not necessarily an indication that respondent was asserting his fifth amendment right. Rather, when he said that respondent would not testify, counsel meant that he would not be calling respondent as a witness in his case-in-chief, because he did not believe that the State could establish a prima facie case.

The trial court denied respondent's motion, noting that it took judicial notice of respondent's pending criminal proceeding and, pursuant to its obligations to protect respondent's constitutional

rights, inquired before the hearing as to whether respondent would be testifying. The court reasoned:

"Clearly, everyone in this proceeding knew that [respondent's] refusal to testify was based on his fifth amendment right. And that was gleaned from the fact that it was a criminal proceeding in which this independent order of protection, this hybrid proceeding which of [sic] [G]eneral [A]ssembly has given us, arose ***. The court in a civil proceeding must draw inferences from that refusal."

Respondent appeals.

## II. ANALYSIS

Respondent argues that the State failed to present sufficient evidence to obtain a plenary order of protection. Specifically, respondent contends that the State did not establish a prima facie case of abuse and that there was no evidence of causation. Moreover, respondent asserts that his decision not to testify was strategic and that it was never clearly established that he intended to assert the fifth amendment. Accordingly, respondent contends that Illinois Pattern Jury Instructions, Civil, No. 5.01 2005 hereinafter IPI Civil 2005 No. 5.01 failure to produce evidence or a witness , was the only possible basis for the trial court s decision to make a negative inference.[1] He further argues that the instruction s four required

---

[1]IPI Civil (2005) No. 5.01 states:

"If a party to this case has failed [to offer evidence] [to produce a witness] within his power to produce, you may infer that the [evidence] [testimony of the witness] would be adverse to that party if you believe each of the following elements:

1. The [evidence] [witness] was under the control of the party and could have been produced by the exercise of reasonable diligence.

elements were not satisfied because, in part, the decision to refrain from testifying was reasonable in light of the

pending criminal case.

The Act provides

"Any proceeding to obtain, modify, reopen or appeal an order of protection, whether

commenced alone or in conjunction with a civil or criminal proceeding, shall be governed by

the rules of civil procedure of this State.  The standard of proof in such a proceeding is proof

---

2.  The [evidence] [witness] was not equally available to an adverse party.

3.  A reasonably prudent person under the same or similar circumstances

would have [offered the evidence] [produced the evidence] if he believed [it to be]

[the

testimony would be] favorable to him.

4.  No reasonable excuse for the failure has been shown."

by a preponderance of the evidence, whether the proceeding is heard in criminal or civil court."  750 ILCS 60/205(a) (West 2002).

Proof by a preponderance of the evidence means that the fact at issue, here abuse at the hands of respondent, is rendered more likely than not.  See, e.g., Lindsey v. Board of Education of the City of Chicago, 354 Ill. App. 3d 971, 986 2004 .

Respondent argues first that the State did not establish a prima facie case.  Although he does not specify the elements of an alleged prima facie case, he contends that the State failed to establish causation.  We are compelled to clarify that the Act does not specify a particular prima facie case that must be satisfied in order for a petitioner to obtain an order of protection.  See People ex rel. Minteer v. Kozin, 297 Ill. App. 3d 1038, 1042 1998   trial court improperly determined that petitioner established a prima facie case at the ex parte hearing and that respondent failed to overcome the prima facie case instead, court should have considered whether petitioner s evidence at the order of protection hearing established abuse by a preponderance of the evidence  see also In re Marriage of Gordon, 233 Ill. App. 3d 617, 650 1992   issue was whether petitioner proved abuse by a preponderance of the evidence, not whether petitioner established a prima facie case .  Instead, the Act requires proof of abuse by a preponderance of the evidence.  Thus, our inquiry is whether the preponderance of the evidence burden was met, not whether prima facie elements of a cause of action were established.

This court recently held that a trial court s findings under the Act are reviewed using the manifest-weight-of-the-evidence standard.  Best v. Best, 358 Ill. App. 3d 1046, 1048 2005 , appeal allowed, 217 Ill. 2d 558  2005 .  Application of the manifest-weight-of-the-evidence standard requires reversal of the trial court s decision only if the opposite conclusion is clearly evident or the determination is unreasonable, arbitrary, or without basis in the evidence.  In re D.F., 201 Ill. 2d 476, 498 (2002).  The Best holding represents a departure from prior authority that reviewed  for an abuse of discretion a trial court's

findings under the Act and reversed only if the court's ruling was arbitrary, fanciful, or unreasonable, or when no reasonable person would adopt the court's view. See, e.g., Wilson v. Jackson, 312 Ill. App. 3d 1156, 1165 (2000). For the following reasons, we conclude that the trial court's ruling was erroneous under either standard.

Turning to the negative inference, the trial court determined, based on respondent's representation before the hearing, that respondent intended to invoke his fifth amendment privilege against self-incrimination. After the close of evidence, the court inferred that respondent did not testify because his testimony would have been adverse to him. Accordingly, we must address respondent's argument that the trial court erred in finding that he invoked the fifth amendment and assess whether the trial court appropriately drew a negative inference from respondent's failure to testify.

Respondent's position regarding his reason for not testifying at the plenary-order-of-protection hearing has varied with each stage of the proceedings. Respondent's current contention--that his decision to refrain from testifying was strategic and that he did not intend to assert his fifth amendment privilege against self-incrimination--is disingenuous. Indeed, respondent's position at the hearing, given contemporaneously with the trial court's ruling, was that the court should infer that he was asserting his fifth amendment right to protect himself from self-incrimination. Respondent's counsel made clear that he could not recommend that his client testify, in light of the pending criminal charges. The only reasonable inference to be made from this representation is that counsel did not want his client to incriminate himself in the criminal case. Moreover, if respondent was convinced before the hearing that the State would be unable to meet its burden, it is curious that he did not move for a directed finding at the close of the State's case. We do not mean to suggest that a motion for a directed finding was mandatory however, the failure to so move weakens respondent's argument that his refusal

to testify was a reflection of the strength of the State's case.  Based on the foregoing, the trial court's

finding that respondent invoked the fifth amendment was reasonable.[2]

---

[2]Because respondent invoked the fifth *amendment, we need not address his assertion that the trial*

court inappropriately applied IPI Civil 2005 No. 5.01. Setting aside the fact that there is no right to a jury trial under the Act 750 ILCS 60/206 (West 2002)) and, thus, this instruction is not given in order of protection hearings, respondent cites no basis in the record for his assertion that the trial court considered or applied the factors set forth by IPI Civil 2005 No. 5.01. Any efforts on our behalf to assess how or where the trial court erred in its consideration of the instruction's factors would constitute sheer guesswork. Moreover, and contrary to respondent's assertion, IPI Civil 2005 No. 5.01 is not the only basis for drawing a negative inference in a civil case. As we shall see, where, as here, a respondent invokes the fifth amendment in a civil case, a negative inference may be drawn.

The fifth amendment to the United States Constitution provides that "[n]o person *** shall be compelled in any criminal case to be a witness against himself." U.S. Const., amend. V. Similarly, our state constitution provides that "[n]o person shall be compelled in a criminal case to give evidence against himself nor be twice put in jeopardy for the same offense." Ill. Const. 1970, art. I, §10 *see* Halpin v. Scott, 415 Ill. 104, 107 1953 United States Supreme Court decisions interpreting the fifth amendment are authoritative in construing article I, section 10, of the Illinois Constitution . The privilege against self-incrimination may by invoked in any proceeding, civil or criminal, in which the witness reasonably believes that the information sought, or discoverable as a result of the witness s testimony, could be used in a subsequent criminal proceeding against him or her. Allen v. Illinois, 478 U.S. 364, 368, 92 L. Ed. 2d 296, 303-04, 106 S. Ct. 2988, 2991 1986 People v. James, 304 Ill. App. 3d 52, 59 1999 .

Clearly, i t is the prevailing rule that the Fifth Amendment does not forbid adverse inferences against parties in civil actions when they refuse to testify in response to probative evidence offered against them. People v. 1,124,905 United States Currency One 1988 Chevrolet Astro Van, 177 Ill. 2d 314, 332 1997 , quoting Baxter v. Palmigiano, 425 U.S. 308, 318, 47 L. Ed. 2d 810, 821, 96 S. Ct. 1551, 1558 1976 . However, our research has not uncovered any cases addressing the application of a negative inference against a respondent who refuses to testify in a civil order-of-protection hearing when criminal charges, based on the same alleged conduct, are simultaneously pending. Nevertheless, several cases are instructive.

In Giampa v. Illinois Civil Service Comm n, 89 Ill. App. 3d 606 1980 , a civil service commission hearing officer considered, along with other evidence, the plaintiff s invocation of his fifth amendment privilege against self-incrimination when it recommended that the plaintiff be discharged from his position for conduct unbecoming of a state employee. The plaintiff appealed, arguing that consideration of his refusal to

testify was improper because criminal charges based on the same alleged occurrences were also pending. The appellate court found no error. *Giampa*, 89 Ill. App. 3d at 613. The court concluded that the fact that criminal charges were pending against the plaintiff did not violate his right to be free from self-incrimination. *Giampa*, 89 Ill. App. 3d at 613. The court reasoned

The constitutional guarantee against self-incrimination protects a witness from being forced to give testimony leading to the imposition of criminal penalties, but it does not insulate a witness from every possible detriment resulting from his testimony.

There is nothing inherently repugnant to due process in requiring plaintiff to choose between giving testimony at the civil proceeding and keeping silent, even though giving testimony at the hearing may damage his criminal case. *Giampa*, 89 Ill. App. 3d at 613.

In *Jacksonville Savings Bank v. Kovack*, 326 Ill. App. 3d 1131 2002, the defendant argued that the trial court abused its discretion in refusing to stay civil proceedings in light of a pending criminal investigation. The defendant was accused of illegally receiving funds belonging to the bank while he was employed there. He asserted that a stay was appropriate and that he could not defend himself in the civil proceedings because he might incriminate himself in the pending criminal investigation. On appeal, the court disagreed, holding that the fifth amendment does not mandate a stay of civil proceedings pending the outcome of similar or parallel criminal proceedings. *Jacksonville*, 326 Ill. App. 3d at 1135. The court acknowledged that the defendant s position was unenviable, but stated

A defendant has no absolute right not to be forced to choose between testifying in a civil matter and asserting his fifth amendment privilege. Not only is it permissible to conduct a civil proceeding at the same time as a related criminal proceeding, even if that necessitates invocation of the fifth amendment privilege, but it is even permissible for the trier of fact to draw adverse inferences from the invocation of

the fifth amendment in a civil proceeding. *Jacksonville*, 326 Ill. App. 3d at 1135, quoting *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 326 (9th Cir. 1995).

This court recently held that a trial court did not err in refusing to make a negative inference from a defendant's failure to testify in a civil proceeding when a criminal case was pending. *People ex rel. Sherman v. Cryns*, 327 Ill. App. 3d 753, 766 (2002), aff'd on other grounds, 203 Ill. 2d 264 (2003). We determined that the trial court was not required to make the negative inference, but we did not reach the question whether a negative inference was constitutionally forbidden. Accordingly, our decision in *Cryns* did not alter the rule that a negative inference is permissible, but is not required. See, e.g., *Daniels v. Pipefitters Ass'n Local Union No. 597*, 983 F.2d 800, 802 (7th Cir. 1993).

It is clear from *Giampa* and *Jacksonville* that pending criminal charges do not make improper the drawing of a negative inference from a party's failure to testify in a civil proceeding. We see no reason to apply a different rule in the order-of-protection context. Certainly a respondent in a civil order-of-protection hearing is in a difficult position if criminal proceedings are pending. If the respondent testifies, he or she risks self-incrimination in the criminal matter. Refusal to testify, however, may result in a negative inference and the loss of valued interests such as child visitation or custody. Nevertheless, such tension exists whether the proceedings involve domestic violence or, as seen in *Giampa* and *Jacksonville*, employee misconduct or illegal receipt of funds. Here, a negative inference was theoretically applicable despite the pending criminal charges.

We conclude, however, that the trial court erred in its finding that the plenary order of protection should issue, based on its application of the negative inference. A fifth amendment invocation cannot, on its own, constitute the basis of a guilty finding. *LaSalle Bank v. Seguban*, 54 F.3d 387, 390 (7th Cir. 1995) (finding, in summary judgment context, that judgment cannot rest on silence without additional probative evidence). "Silence is a relevant factor to be considered in light of the proffered evidence, but the direct inference of guilt from silence is forbidden." *LaSalle Bank*, 54 F.3d at 390; see also

*Independent Trust Corp. v. Hurwick*, 351 Ill. App. 941, 953-54 2004 *Giampa*, 89 Ill. App. 3d at 613-14 *National Acceptance Co. of America v. Bathalter*, 705 F.2d 924, 929 7th Cir. 1983 . As discussed above, the general rule is that a negative inference may be drawn when a party in a civil proceeding fails to testify in response to <u>probative</u> <u>evidence</u>. An accusation of misconduct is insufficient to satisfy the probative evidence requirement; the complainant must produce evidence in support of the allegations. *LaSalle Bank*, 54 F.3d at 391. In other words, if the court has other evidence of the alleged misconduct, the court may constitutionally consider the party's silence as additional supporting evidence.

Here, the requisite probative evidence was missing. *The verified petition for the emergency order of protection alleged that respondent struck Aubrey with a rod, causing a welt on her leg. At the hearing on the plenary order, however, the State put forth no evidence to support those allegations. Instead, the State s only witness established that Aubrey, after being in respondent s exclusive control, was upset and injured. There was no evidence or testimony regarding how the injury occurred or whether respondent in fact inflicted the injury.* Accordingly, given the State's failure to proffer probative evidence against respondent, the trial court's application of the negative inference was effectively the same as deeming respondent's silence an admission of the allegations. In other words, respondent's silence was not additional evidence pointing towards abuse; it was the only evidence. *The direct inference of guilt from silence is improper. LaSalle Bank*, 54 F.3d at 390.

*To be clear,* there may be times when the negative inference is the final piece that tips the scales in the State's favor. Our holding should not be interpreted as requiring the State to meet its burden by a preponderance of the evidence before a negative inference may be applied. Indeed, to prohibit the application of a negative inference unless the State has already produced enough evidence to win is illogical. In that scenario, where the State already has sufficient evidence to meet

its burden, there is no point to drawing a negative inference, because it would merely be superfluous. *However, there must be some probative evidence proffered that supports the allegations before a negative inference may be applied. Respondent's silence here was not the final piece of evidence that tipped the scales  it was the only piece and, as such, the trial court erred in issuing the order.*

For the foregoing reasons, the judgment of the circuit court of Du Page County is reversed.

Reversed.

BOWMAN and BYRNE, JJ., concur.