**NOTICE**
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 200654-U

NO. 4-20-0654

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 7, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* O.S., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Vermilion County |
| Petitioner-Appellee, | ) | No. 18JA104 |
| v. | ) | |
| Octavius S., | ) | Honorable |
| Respondent-Appellant). | ) | Thomas M. O'Shaughnessy, |
| | ) | Judge Presiding. |

---

JUSTICE TURNER delivered the judgment of the court.
Presiding Justice Knecht and Justice Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The circuit court's findings respondent was unfit and it was in the minor child's best interests to terminate respondent's parental rights were not against the manifest weight of the evidence.

¶ 2    In February 2020, the State filed a motion for the termination of the parental rights of respondent, Octavius S., as to his minor child, O.S. (born in September 2010). After an August 2020 hearing, the Vermilion County circuit court found respondent unfit as alleged in the termination motion. At a December 2020 hearing, the court found it was in the minor child's best interests to terminate respondent's parental rights.

¶ 3    Respondent appeals, asserting the circuit court erred by (1) finding him unfit and (2) concluding it was in the minor child's best interests to terminate his parental rights. We affirm.

¶ 4                                    I. BACKGROUND

¶ 5        The minor child's mother, Kathy S., is not a party to this appeal.  In October 2018, the State filed a petition for the adjudication of wardship of the minor child.  The petition alleged the minor child was neglected pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(b) (West 2018)) in that his environment was injurious to his welfare when he resided with (1) his parents because they engaged in domestic violence in front of him, which placed him in physical and emotional danger of harm (count I), and (2) Kathy due to her substance abuse (count II).  The third count asserted the minor child was neglected pursuant to section 2-3(1)(a) of the Juvenile Court Act (705 ILCS 405/2-3(1)(a) (West 2018)) in that his parents failed to provide for his proper and necessary support, education, and other remedial care.  At a March 2019 hearing, Kathy admitted count II, and the circuit court accepted her admission and adjudicated the minor child neglected as alleged in count II.  At a July 2019 hearing, the court entered a dispositional order finding respondent was unfit, unable, and unwilling to care for, protect, train, or discipline the minor child.  The order noted respondent had not engaged (1) in services needed including substance abuse treatment and (2) with the minor child.  The court made the minor child a ward of the court and appointed the Department of Children and Family Services (DCFS) as the minor child's guardian and custodian.  Kathy later executed a final and irrevocable consent to adoption of the minor child by a specified person.

¶ 6        In February 2020, the State filed a motion to terminate respondent's parental rights to his minor child.  The motion asserted respondent was unfit for failing to maintain a reasonable degree of interest, concern, or responsibility as to the minor child's welfare.  See 750 ILCS 50/1(D)(b) (West Supp. 2019).

¶ 7        In August 2020, the circuit court held the fitness hearing.  The State presented the

testimony of Candice Hall, the caseworker, and respondent. It also asked the circuit court to take judicial notice of its prior orders in the case. Respondent asked the court to take judicial notice of respondent's two pending felonies, Vermilion County case Nos. 19-CF-48 and 19-CF-335. Respondent was in custody from February 4, 2019, to March 1, 2019, on case No. 19-CF-48. Respondent was arrested on June 13, 2019, for case No. 19-CF-335 and was still incarcerated at the time of the hearing. His trial on both charges was set for September 1, 2020. The previous two trial dates had been continued based on the State's motion and over respondent's objection.

¶ 8        Hall testified neither she nor the agency had received any contact from respondent. The foster parents of the minor child had also not received contact from respondent. The following services were recommended for respondent and incorporated in the service plan: (1) parenting education, (2) anger management classes, (3) substance abuse counseling, and (4) individual counseling. Respondent received referrals for the services but had not successfully completed any of them. Hall further testified respondent had not visited with the minor child since October 2018. Visits were offered to respondent throughout the time of the case until March 2020, including telephone call or Skype visits when respondent was incarcerated. When Hall offered him visits in early June 2019, respondent indicated he would like visits. Hall told respondent to contact her if he needed help with transportation. Respondent did not contact her after that. At the time of the fitness hearing, respondent had been in jail since around June 13, 2019. Hall knew respondent was not in jail in early June 2019 but believed he had been incarcerated at an earlier time during the pendency of this case. No services were offered in jail. As to maintaining contact with Hall, respondent was available for telephone calls in jail but did not respond to letters. When out of jail, he answered one telephone call.

¶ 9        Respondent testified he was arrested on June 12, 2019, for home invasion. He

- 3 -

explained he missed hearings when out of jail because he did not know about them. He further testified he did not know he needed to take parenting classes. Respondent did sign up for anger management classes but was incarcerated a few days later in February 2019. When he was released from jail in March 2019, respondent did not attend classes because he lacked transportation. As to substance abuse treatment, respondent testified he completed outpatient treatment in 2018 before this case was opened. Respondent said he showed the caseworker his certificate. As to visitation, he had not had any since the case was open. Respondent requested visits with O.S. Respondent further testified he heard O.S. did not want to talk to him because the foster parents told O.S. respondent was incarcerated because respondent beat his girlfriend.

¶ 10 At the conclusion of the hearing, the circuit court found respondent unfit as alleged in the termination motion.

¶ 11 On December 18, 2020, the circuit court held the best interests hearing. The State presented the best interests report and Hall's testimony, and respondent testified on his own behalf. Hall testified O.S. had been living in a relative placement since the case was opened and was well bonded to his foster family. The foster parents had two children who got along very well with O.S. O.S. was in fourth grade and making decent grades. He did not need any continuing services. Additionally, O.S. had lots of friends at school and in the community. Hall felt O.S.'s foster home was the best placement for him. O.S. wanted to stay in his placement and wanted to be adopted by his foster parents. O.S.'s foster parents were willing to adopt him. Additionally, Hall testified respondent received a five-year prison sentence under a plea agreement and was currently in the Vienna Correctional Center.

¶ 12 Respondent testified he would get released from prison on December 6, 2021, and planned to return to Danville. He would be able to care for O.S. at that time. In prison,

respondent was participating in anger management classes and was on a waiting list for parenting classes and substance abuse treatment. Respondent stated he had not seen O.S. since early 2019 when respondent attended one of O.S.'s football games. At that time, he had a good relationship with O.S. Respondent believed O.S.'s foster family had corrupted O.S.

¶ 13 After hearing the parties' arguments, the circuit court found it was in O.S.'s best interests to terminate respondent's parental rights.

¶ 14 On December 23, 2020, respondent filed a notice of appeal in sufficient compliance with Illinois Supreme Court Rule 303 (eff. July 1, 2017). See Ill. S. Ct. R. 660(b) (eff. Oct. 1, 2001) (providing the rules governing civil cases also govern appeals from final judgments in all proceedings under the Juvenile Court Act, except for delinquency cases). Thus, this court has jurisdiction of the appeal pursuant to Illinois Supreme Court Rule 307(a)(6) (eff. Nov. 1, 2017).

¶ 15                                     II. ANALYSIS

¶ 16 Under section 2-29(2) of the Juvenile Court Act (705 ILCS 405/2-29(2) (West 2018)), the involuntary termination of parental rights involves a two-step process. First, the State must prove by clear and convincing evidence the parent is "unfit," as that term is defined in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West Supp. 2019)). *In re Donald A.G.*, 221 Ill. 2d 234, 244, 850 N.E.2d 172, 177 (2006). If the circuit court makes a finding of unfitness, then the State must prove by a preponderance of the evidence it is in the minor child's best interests that parental rights be terminated. *In re D.T.*, 212 Ill. 2d 347, 366, 818 N.E.2d 1214, 1228 (2004).

¶ 17 Since the circuit court has the best opportunity to observe the demeanor and conduct of the parties and witnesses, it is in the best position to determine the credibility and

weight of the witnesses' testimony. *In re E.S.*, 324 Ill. App. 3d 661, 667, 756 N.E.2d 422, 427 (2001). Further, in matters involving a minor, the circuit court receives broad discretion and great deference. *E.S.*, 324 Ill. App. 3d at 667, 756 N.E.2d at 427. Thus, a reviewing court will not disturb a circuit court's unfitness finding and best-interests determination unless they are contrary to the manifest weight of the evidence. See *In re Gwynne P.*, 215 Ill. 2d 340, 354, 830 N.E.2d 508, 516-17 (2005) (fitness finding); *In re J.L.*, 236 Ill. 2d 329, 344, 924 N.E.2d 961, 970 (2010) (best-interests determination). A circuit court's decision is against the manifest weight of the evidence only where the opposite conclusion is clearly apparent. *Gwynne P.*, 215 Ill. 2d at 354, 830 N.E.2d at 517.

¶ 18                                    A. Respondent's Fitness

¶ 19          Respondent contends the circuit court erred by finding him unfit because he was incarcerated during most of this case and thus unable to participate in services and have visits with his son. The State disagrees.

¶ 20          In this case, the circuit court found respondent unfit as defined in section 1(D)(b) of the Adoption Act (750 ILCS 50/1(D)(b) (West Supp. 2019)), which states the "[f]ailure to maintain a reasonable degree of interest, concern or responsibility as to the child's welfare." With that unfitness ground, any of its three elements "may be considered on its own as a basis in determining whether the parent is unfit." *In re Nicholas C.*, 2017 IL App (1st) 162101, ¶ 24, 77 N.E.3d 1173. A finding of unfitness under that section is "based on a subjective analysis." *Nicholas C.*, 2017 IL App (1st) 162101, ¶ 24. Moreover, this unfitness ground "does not focus on the parent's success but, rather, the reasonableness of [his] efforts and takes into account the parent's difficulties and circumstances." *Nicholas C.*, 2017 IL App (1st) 162101, ¶ 24. However, a parent's demonstration of some interest, affection, or responsibility toward his or her

child does not make him or her fit under this ground; rather, the parent's interest, concern, and/or responsibility must be reasonable. *Nicholas C.*, 2017 IL App (1st) 162101, ¶ 24. Last, we note " '[n]oncompliance with an imposed service plan, a continued addiction to drugs, a repeated failure to obtain treatment for an addiction, and infrequent or irregular visitation with the child have all been held to be sufficient evidence warranting a finding of unfitness under [ground] (b).' " *Nicholas C.*, 2017 IL App (1st) 162101, ¶ 24 (quoting *In re Jaron Z.*, 348 Ill. App. 3d 239, 259, 810 N.E.2d 108, 125 (2004)).

¶ 21    Here, the evidence showed respondent had not had a visit with O.S. during the entire pendency of the case. Respondent himself admitted not seeing O.S. since the beginning of 2019 when he watched O.S.'s football game. While respondent contends he could not visit with O.S. when respondent was incarcerated, respondent did not visit with O.S. for the periods of time when he was out of jail. Moreover, Hall testified respondent could have telephone calls with O.S. when respondent was incarcerated. She further testified she was unaware of respondent sending O.S. any letters, cards, or gifts. Additionally, respondent did not complete any services in this case and only completed an anger management assessment when out of jail. Thus, the State presented ample evidence for the court to find respondent unfit under section 1(D)(b) of the Adoption Act (750 ILCS 50/1(D)(b) (West Supp. 2019)).

¶ 22                    B. Minor Child's Best Interests

¶ 23    Respondent also challenges the circuit court's finding it was in O.S.'s best interests to terminate his parental rights. He notes he had no visits with O.S. and contends he could have demonstrated the bond he had with O.S. if he had visits. The State disagrees and contends the court's finding was proper.

¶ 24    During the best interests hearing, the circuit court focuses on "the child's welfare

and whether termination would improve the child's future financial, social and emotional atmosphere." *In re D.M.*, 336 Ill. App. 3d 766, 772, 784 N.E.2d 304, 309 (2002). In doing so, the court considers the factors set forth in section 1-3(4.05) of the Juvenile Court Act (705 ILCS 405/1-3(4.05) (West 2018)) in the context of the child's age and developmental needs. See *In re T.A.*, 359 Ill. App. 3d 953, 959-60, 835 N.E.2d 908, 912-13 (2005). Those factors include the following: the child's physical safety and welfare; the development of the child's identity; the child's family, cultural, and religious background and ties; the child's sense of attachments, including continuity of affection for the child, the child's feelings of love, being valued, security, and familiarity, and taking into account the least disruptive placement for the child; the child's own wishes and long-term goals; the child's community ties, including church, school, and friends; the child's need for permanence, which includes the child's need for stability and continuity of relationships with parent figures, siblings, and other relatives; the uniqueness of every family and each child; the risks attendant to entering and being in substitute care; and the wishes of the persons available to care for the child. 705 ILCS 405/1-3(4.05) (West 2018).

¶ 25          We note a parent's unfitness to have custody of his or her child does not automatically result in the termination of the parent's legal relationship with the child. *In re M.F.*, 326 Ill. App. 3d 1110, 1115, 762 N.E.2d 701, 706 (2002). As stated, the State must prove by a preponderance of the evidence the termination of parental rights is in the minor child's best interests. See *D.T.*, 212 Ill. 2d at 366, 818 N.E.2d at 1228. "Proof by a preponderance of the evidence means that the fact at issue *** is rendered more likely than not." *People v. Houar*, 365 Ill. App. 3d 682, 686, 850 N.E.2d 327, 331 (2006).

¶ 26          In this case, the best interests factors all favor termination of respondent's parental rights. O.S.'s bond and ties were with his foster family. O.S. had indicated he desired

to be adopted by his foster parents who were willing to adopt him. Even when not incarcerated, respondent did not visit with O.S. Moreover, respondent would be in prison until December 2021 and had been in and out of jail during the pendency of this case. No evidence was presented respondent could provide stability and permanency for O.S.

¶ 27 Accordingly, we find the circuit court's conclusion it was in the minor child's best interests to terminate respondent's parental rights was not against the manifest weight of the evidence.

¶ 28 III. CONCLUSION

¶ 29 For the reasons stated, we affirm the Vermilion County circuit court's judgment.

¶ 30 Affirmed.