NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (4th) 221031-U

NO. 4-22-1031

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 21, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* C.W., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Ogle County |
| Petitioner-Appellee, | ) | No. 20JA2 |
| v. | ) | |
| Seantai R., | ) | Honorable |
| Respondent-Appellant.) | ) | Anthony Peska, |
| | ) | Judge Presiding. |

JUSTICE LANNERD delivered the judgment of the court.
Presiding Justice DeArmond and Justice Knecht concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The appellate court granted appellate counsel's motion to withdraw and affirmed the trial court's judgment, concluding no issue of arguable merit could be raised on appeal.

¶ 2     In April 2020, the State filed a petition for adjudication of wardship with respect to C.W., the minor child of respondent, Seantai R. The trial court adjudicated C.W. a ward of the court and placed guardianship with the Illinois Department of Children and Family Services (DCFS). In June 2022, the State filed a motion to terminate respondent's parental rights. In October 2022, the court found respondent unfit and concluded it was in the minor's best interest that respondent's parental rights be terminated. Counsel was appointed to represent respondent on appeal.

¶ 3     Thereafter, appellate counsel filed a motion for leave to withdraw with a supporting brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), contending no

meritorious issue can be raised on appeal. This court granted respondent leave to file additional points and authorities on or before March 16, 2023. Respondent filed a response on April 17, 2023. Despite the late filing, this court has considered respondent's response given the significant issues before the court. For the reasons that follow, we grant appellate counsel's motion to withdraw and affirm the trial court's judgment.

¶ 4                                    I. BACKGROUND

¶ 5          In April 2020, the State filed a petition for adjudication of wardship with respect to C.W., born in May 2017 to respondent and Charles W., who is not a party to this appeal. In the petition, the State alleged C.W. was a neglected minor pursuant to section 2-3(1)(b) and (c) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(b), (c) (West 2020)) and his environment was injurious to his welfare based on (1) the parents' substance abuse, (2) domestic violence in C.W.'s presence, (3) respondent's mental health issues, (4) the parents' prior involvement in neglect investigations, and (5) cocaine in C.W.'s blood, urine, or meconium at his birth. A DCFS report stated C.W. was taken into protective custody when respondent was involuntarily admitted into a psychiatric unit due to experiencing suicidal ideations and admitted to taking crystal methamphetamine, cocaine, Tylenol, and methadone. The trial court held a shelter care hearing the following day and placed C.W. in the temporary custody of DCFS.

¶ 6          On July 21, 2020, the trial court held an adjudicatory hearing. Respondent stipulated C.W. had cocaine in his blood, urine, or meconium at birth. The State additionally entered an initial service plan dated June 9, 2020, into evidence. The court adjudicated the minor neglected and set a dispositional hearing. The court and the written adjudicatory order admonished both parents they "must comply with the terms of the service plan and correct the conditions that require the Minor to be in care or they risk termination of their parental rights."

¶ 7 On September 8, 2020, the trial court held the dispositional hearing. The integrated assessment completed in July 2020 detailed respondent's history of substance abuse and mental health issues. The court entered a dispositional order making C.W. a ward of the court and placing custody and guardianship with DCFS. The court set the permanency goal as return home within 12 months.

¶ 8 Over the next 22 months, the trial court held several permanency hearings. At the June 8, 2021, permanency hearing, the court admitted into evidence the DCFS family service plan and reports from the Youth Service Bureau (YSB) and the court-appointed special advocate (CASA). The service plan indicated respondent had not engaged in services, missed visits with C.W., and refused drug drops with YSB. Respondent had a positive drug test on March 1, 2021. The service plan indicated respondent was enrolled in substance abuse services at Sinnissippi Centers but was continuing to use drugs. The YSB caseworker expressed concern respondent was using drugs during visits with C.W. The court entered a permanency order finding respondent had not made reasonable efforts or reasonable progress towards the return of the minor.

¶ 9 On June 7, 2022, the trial court changed C.W.'s permanency goal to substitute care pending termination of parental rights. The following day, the State filed a petition for termination of parental rights. The petition alleged respondent was unfit because she failed to (1) maintain a reasonable degree of interest, concern, or responsibility as to the child's welfare (750 ILCS 50/1(D)(b) (West 2020)); (2) protect the child from conditions within the environment injurious to the child's welfare (*id.* § 1(D)(g)); (3) make reasonable efforts towards the child's return during any nine-month period after the adjudication of neglect on July 21, 2020 (*id.* § 1(D)(m)(i)); and (4) make reasonable progress towards the child's return during any

nine-month period since the adjudication on neglect on July 21, 2020 (*id.* § 1(D)(m)(ii)). An amended petition included specific nine-month periods for the allegations, including from July 21, 2020, to April 21, 2021.

¶ 10                                    A. Fitness Hearing

¶ 11        At the October 25, 2022, hearing on the State's petition, the trial court announced it would bifurcate the hearing, first considering the allegations of unfitness and continuing to a best interest hearing if necessary.

¶ 12        YSB caseworker Monica Gallagher testified she had been C.W.'s caseworker beginning November 2021 and had familiarized herself with the case history since the July 2020 adjudicatory order. Gallagher testified there was no period of time from the adjudicatory order to present when respondent made reasonable efforts or progress towards the return of C.W. Gallagher testified, for the period of July 2020 through April 2021, respondent was referred for services but "there was a lack of progress." Gallagher explained defendant was referred for mental health, domestic violence, substance abuse, and parenting services. By the final service plan in April 2022, respondent had the same services outstanding. Gallagher explained, at that time, respondent "self[-]reported saying that she was in services, that was about the time that we finally got something from a counselor stating that she was in them, but she did not have progress due to many reasons." Gallagher agreed respondent made "some effort but not a reasonable effort" and no progress. According to Gallagher, respondent claimed she was receiving services at Sinnissippi Centers, but Gallagher had trouble obtaining a response from the counselors she contacted and respondent never provided documentation of her progress or efforts. In addition, Gallagher testified she had not "received any evidence ***, from either of the parents or any other agency[,] that they have successfully completed any of the services that

- 4 -

have been requested of them." Gallagher noted respondent completed 4 of 36 drug drops, and she had not appeared for a drug drop since August 2021. On the State's motion, the trial court took judicial notice of the four permanency orders in this case.

¶ 13        Respondent testified she had been unemployed but was starting a new job the day after the hearing. She was in counseling two times a week and had been participating in counseling for two years at Sinnissippi Centers. Respondent claimed she had completed all services except domestic violence counseling and parenting classes and provided Gallagher with five certificates of completion. Respondent acknowledged she had not brought copies of the certificates of completion or shared them with her attorney. In addition, respondent claimed both she and her counselors had trouble contacting Gallagher. On cross-examination by the guardian *ad litem*, respondent acknowledged she had no certificates of completion prior to November 2021. Respondent accused Gallagher of "lying" about her missing drug drops. As the guardian *ad litem* continued to cross-examine respondent, the following colloquy occurred:

> "Q. Do you recall when your last positive drop was?
>
> A. Last year in, maybe in, maybe February.
>
> Q. And what was it positive for?
>
> A. Cocaine.
>
> Q. And have you used cocaine since then?
>
> A. Not, like maybe two or three times since then, and it's been awhile, it's been over six months.
>
> Q. So you think prior to, probably been six months since you last used cocaine?

A. Yeah, I've gained a lot, over a hundred pounds, so—I guess my counselors could tell you that. They can—

Q. So you got a certificate of completion for drug services when you were still using cocaine?

A. I haven't used since then, since I did all—

THE COURT: Can you please speak into the microphone.

[RESPONDENT]: Huh? I don't want to be up here any more. My tooth hurts really bad, it's infected and I can barely talk. But it's like my jaw is completely dropping, so—I still have to go get an ID today and I have to get these papers to you guys before that, so I have a lot of things I still have to do before I can start my job tomorrow. I'm really nervous enough, I don't like being up here any more. I have anxiety.

THE COURT: Are you refusing to answer any further questions?

MS. FOLK [(guardian *ad litem*)]: He's talking to you.

[RESPONDENT]: I don't, I don't have any questions, I just, I don't want—

THE COURT: Are you, are you choosing to not answer any other questions?

[RESPONDENT]: Yes, because my tooth hurts really bad, it's, I want to cry right now, I'm not kidding.

THE COURT: Very good.

[RESPONDENT]: It's throbbing.

THE COURT: Go ahead and step down.

[RESPONDENT]: I'm sorry, I just—

THE COURT: It's your, it's your case.

([Respondent] stepped down from the stand.)

THE COURT: Mr. O'Brien [(respondent's counsel)], would you like to put on any other evidence?

MR. O'BRIEN: I have nothing else I can present today, Judge."

¶ 14 At the conclusion of the hearing, the trial court found respondent unfit on the bases alleged in the petition. The court noted the "consistent theme" of the case was "no reasonable efforts, no reasonable progress was made." As to respondent's testimony she had completed services, had documentation, and Gallagher was lying, the court found respondent's testimony unbelievable. The court noted there was "some indication" respondent was engaged in services at Sinnissippi Centers, but there was "no indication that she successfully completed or [was] even enroute [*sic*] to successfully completing that."

¶ 15 B. Best Interest Hearing

¶ 16 The trial court indicated it planned to continue to the best interest hearing after a recess to give respondent's counsel a chance to speak with her. When the court reconvened, respondent's counsel indicated she had departed. The following colloquy occurred:

"MR. O'BRIEN: Judge, I will make a motion to continue. My client was present earlier. As she indicated during her testimony, she has a job that she is starting that she has multiple identification verification steps that were to be completed today. She indicated to me that although she knows this is important, she would not be able to keep the job if she were not able to leave and begin working on getting her new identification, since the Secretary of State's office is

here in Oregon and she was present, this was the only opportunity she thought she had, wanting to do so prior to starting a job.

In addition to that, although the CASA report was filed, I was able to go over some items with her, I did not get the CASA report, I do not have a position of her about the introduction of the report or other means.

But in addition, the other issues that we had for the first step of this motion, without her presence, I, I'm in a difficult spot, and I don't know what positions to take so I am respectfully asking to continue the best interest piece.

THE COURT: All right, so as far as it's concerned, your client was present, knew that this was a, was a two-stage proceeding, I admonished her of the same, she chose to leave. Her job starts tomorrow, she needs an ID, and the only time to do it is in the middle of her hearing is what you're saying.

MR. O'BRIEN: She didn't put it that specific way, but—

THE COURT: I'm putting it that specific. Your motion is denied."

¶ 17    The State presented the CASA report without objection. Respondent's counsel presented no evidence. Based on the information in the CASA report, the trial court found C.W. was in a loving home environment with his foster parents and foster siblings. Comparatively, respondent's visitations with C.W. "amounted to a free-for all" and involved "no interaction at all." The court noted respondent and Charles W. were "unwilling to place their own needs ahead of the needs of their child." The court found it was in the best interest of C.W. to terminate the parental rights of respondent and Charles W. and appointed DCFS guardianship with the power to consent to adoption.

¶ 18    This appeal followed.

¶ 19　　　　　On appeal, appellate counsel filed a motion to withdraw as counsel and a supporting brief in compliance with *Anders*. See *In re J.P.*, 2016 IL App (1st) 161518, ¶ 8, 65 N.E.3d 1009 (finding *Anders* applies when counsel seeks to withdraw from representation on direct appeal from orders affecting parental rights under the Juvenile Court Act). This court granted respondent leave to file additional points and authorities on or before March 16, 2023. Respondent filed a late response on April 17, 2023.

¶ 20　　　　　　　　　　　　　　　II. ANALYSIS

¶ 21　　　　　Appellate counsel contends he can raise no meritorious claim (1) the trial court's finding of unfitness was against the manifest weight of the evidence or (2) the court abused its discretion in denying respondent's motion to continue the best interest hearing. We agree.

¶ 22　　　　　Under section 2-29(2) of the Juvenile Court Act (705 ILCS 405/2-29(2) (West 2020)), the involuntary termination of parental rights involves a two-step process. First, the State must prove by clear and convincing evidence the parent is "unfit," as that term is defined in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2020)). *In re Donald A.G.*, 221 Ill. 2d 234, 244, 850 N.E.2d 172, 177 (2006). If the trial court makes a finding of unfitness, then the State must prove by a preponderance of the evidence it is in the minor child's best interest that parental rights be terminated. *In re D.T.*, 212 Ill. 2d 347, 366, 818 N.E.2d 1214, 1228 (2004).

¶ 23　　　　　In matters involving minors, the trial court has broad discretion, and its decisions are given great deference. *In re E.S.*, 324 Ill. App. 3d 661, 667, 756 N.E.3d 422, 427 (2001). We will not reverse a trial court's unfitness finding or best interest determination unless it is contrary to the manifest weight of the evidence. See *In re Gwynne P.*, 215 Ill. 2d 340, 354, 830 N.E.2d 508, 516-17 (2005) (fitness finding); *In re J.L.*, 236 Ill. 2d 329, 344, 924 N.E.2d 961, 970 (2010)

(best interest determination). A trial court's decision is against the manifest weight of the evidence only where the opposite conclusion is clearly apparent. *Gwynne P.*, 215 Ill. 2d at 354.

¶ 24                                    A. Unfitness Finding

¶ 25            The trial court, in part, found respondent unfit under section 1(D)(m)(ii) of the Adoption Act (750 ILCS 50/1(D)(m)(ii) (West 2020)), which provides a parent may be declared unfit if she fails "to make reasonable progress toward the return of the child to the parent during any 9-month period following the adjudication of neglected or abused minor under Section 2-3 of the Juvenile Court Act." Illinois courts have defined "reasonable progress" as "demonstrable movement toward the goal of reunification." (Internal quotation marks omitted.) *In re Reiny S.*, 374 Ill. App. 3d 1036, 1046, 871 N.E.2d 835, 844 (2007). This court has explained reasonable progress exists when a trial court "can conclude that *** the court, in the *near future*, will be able to order the child returned to parental custody. The court will be able to order the child returned to parental custody in the near future because, at that point, the parent *will have fully complied* with the directives previously given to the parent in order to regain custody of the child." (Emphases in original.) *In re L.L.S.*, 218 Ill. App. 3d 444, 461, 577 N.E.2d 1375, 1387 (1991). We have also emphasized " 'reasonable progress' is an 'objective standard.' " *In re F.P.*, 2014 IL App (4th) 140360, ¶ 88, 19 N.E.3d 227 (quoting *L.L.S.*, 218 Ill. App. 3d at 461). Additionally, in determining a parent's fitness based on reasonable progress, a court may only consider evidence from the relevant time period. *Reiny S.*, 374 Ill. App. 3d at 1046 (citing *In re D.F.*, 208 Ill. 2d 223, 237-38, 802 N.E.2d 800, 809 (2003)). Courts are limited to that period "because reliance upon evidence of any subsequent time period could improperly allow a parent to circumvent her own unfitness because of a bureaucratic delay in bringing her case to trial." *Id.*

¶ 26　　　　In this case, the State listed several nine-month periods in its amended petition for termination. We will consider the period from July 21, 2020, to April 21, 2021. Gallagher testified, specific to July 2020 to April 2021, respondent "was put into some services but no progress." Respondent's service plan recommended mental health, substance abuse, domestic violence, and parenting services. During the initial nine-month period, respondent was not engaged in services and missed visits and drug drops. Respondent had a positive drug drop on March 1, 2021. Gallagher also testified respondent struggled to engage with C.W. during visits and there was no progress seen at visitations throughout the life of the case.

¶ 27　　　　Even if the trial court were to accept respondent's claim she was completing services at Sinnissippi Centers, the outcome remains unchanged as to the July 2020 through April 2021 period. Respondent testified she received her first certificate of completion in November 2021. However, nothing in respondent's testimony suggested she was making reasonable progress during the period of July 2020 through April 2021, and the court was limited to the evidence related to that time period. See *id.* Therefore, it was not against the manifest weight of the evidence for the court to conclude the State proved by clear and convincing evidence respondent was unfit for failing to make reasonable progress between July 21, 2020, and April 21, 2021.

¶ 28　　　　In her late filed response to counsel's motion to withdraw, respondent claimed she stopped her testimony during the fitness hearing because she had a panic attack, and she has completed services. She fails to provide any evidence to substantiate her assertions. In addition, her late response fails to cite any legal authority. Despite the late filing, we have considered her response and it fails to alter our analysis and conclusions herein.

¶ 29     As appellate counsel correctly notes, because we have upheld the trial court's determination respondent did not make reasonable progress towards C.W.'s return during one period, we need not address the other grounds upon which the court found respondent unfit. See *In re Tiffany M.*, 353 Ill. App. 3d 883, 891, 819 N.E.2d 813, 820 (2004). Therefore, we conclude the record reveals no issue of arguable merit can be raised on appeal.

¶ 30                              B. Best Interest Hearing

¶ 31     During the best interest hearing, the trial court focuses on "the child's welfare and whether termination would improve the child's future financial, social and emotional atmosphere." *In re D.M.*, 336 Ill. App. 3d 766, 772, 784 N.E.2d 304, 309 (2002). In so doing, the court considers the factors set forth in section 1-3(4.05) of the Juvenile Court Act (705 ILCS 405/1-3(4.05) (West 2020)). See *In re T.A.*, 359 Ill. App. 3d 953, 959-60, 835 N.E.2d 908, 912-13 (2005). Those factors include the child's physical safety and welfare; the development of the child's identity; the child's familial, cultural, and religious background and ties; the child's sense of attachments, including where the child feels love, attachment, and a sense of being valued; the child's sense of security, familiarity, and continuity of affection; the child's wishes and long-term goals; the child's community ties; the child's need for permanence; and the uniqueness of every family and each child. 705 ILCS 405/1-3(4.05) (West 2020).

¶ 32     We note a parent's unfitness to have custody of her child does not automatically result in the termination of the parent's legal relationship with the child. *In re M.F.*, 326 Ill. App. 3d 1110, 1115, 762 N.E.2d 701, 706 (2002). As stated, the State must prove by a preponderance of the evidence the termination of parental rights is in the minor child's best interest. See *D.T.*, 212 Ill. 2d at 366. "Proof by a preponderance of the evidence means that the fact at issue *** is

rendered more likely than not." *People v. Houar*, 365 Ill. App. 3d 682, 686, 850 N.E.2d 327, 331 (2006).

¶ 33    Appellate counsel contends no meritorious claim can be raised on appeal based on the evidence the trial court heard at the best interest hearing. The primary evidence presented at the hearing was the CASA report, and the court found C.W.'s mental, physical, and safety needs were met by the foster parents. As such, the court found it was in the best interest of C.W. to terminate respondent's parental rights.

¶ 34    Appellate counsel also notes respondent's counsel requested a continuance after respondent's departure and may have had other evidence to present if the trial court had granted the continuance. Nevertheless, appellate counsel contends he can make no argument of merit that the court erred in denying counsel's motion to continue the best interest hearing.

¶ 35    In juvenile cases, "[t]he [trial] court may continue the hearing 'only if the continuance is consistent with the health, safety and best interests of the minor.' " *In re K.O.*, 336 Ill. App. 3d 98, 104, 782 N.E.2d 835, 841 (2002) (quoting 705 ILCS 405/2-14(c) (West 2000)). Further, a motion for a continuance must be filed 10 days prior to the hearing, or "upon the court's own motion and only for good cause shown." 705 ILCS 405/2-14(c) (West 2020). A litigant does not have an absolute right to a continuance. *K.O.*, 336 Ill. App. 3d at 104. "It is within the juvenile court's discretion whether to grant or deny a continuance motion, and the court's decision will not be disturbed absent manifest abuse or palpable injustice." *Id.* We therefore review the court's decision to grant a motion to continue under the abuse of discretion standard. See *In re M.R.*, 393 Ill. App. 3d 609, 619, 912 N.E.2d 337, 346 (2009). "A trial court abuses its discretion when no reasonable person would agree with its decision." *In re M.P.*, 408 Ill. App. 3d 1070, 1073, 945 N.E.2d 1197, 1200 (2011).

¶ 36 In this case, respondent left the courthouse of her own volition prior to the best interest hearing. Despite being aware the trial court was continuing with the best interest hearing after the recess, respondent elected to leave the courthouse, preventing her from assisting her attorney or testifying at that hearing. Appellate counsel contends under these circumstances, it would be frivolous to argue the court abused its discretion in denying counsel's request for a continuance. We agree that there is no argument of merit that the court abused its discretion in denying the request for a continuance of the best interest hearing.

¶ 37                                      III. CONCLUSION

¶ 38 For the reasons stated, we grant appellate counsel's motion to withdraw as counsel because no argument of merit can be raised on appeal, and we affirm the trial court's judgment.

¶ 39 Affirmed.